Our third case for this morning is Smith v. Greystone Alliance, and we will start with Good morning. May it please the Court. Greystone does not dispute that it was erroneous to dismiss this case for lack of jurisdiction as moot based on the expired 2009 offer of judgment that it made to Ms. Smith individually near the start of the case. Instead, its position now is that it should be rejected for a number of reasons. First of all, the July 20 offer did not satisfy Ms. Smith's entire demand for relief. In Scott v. Westlake, this Court held that an offeror can only render the plaintiff's case moot if it gives the plaintiff everything she requested. On its face, the July 20 offer does not give Ms. Smith everything she requested. It provides nothing for a request for actual damages for emotional distress, which is requested in Count 2. So under Scott, the July 20 offeror could not have terminated the Court's jurisdiction over the case on mootness grounds. To make up for this gap in what was offered versus what was requested, the defendant claims that the offer still moots the case because Ms. Smith wasn't entitled to recover any actual damages for emotional distress, that her proof was insufficient. But this still contradicts the Scott case because it says that if you only offer what you think is due as opposed to what is actually demanded, then the case is still not moot. Or put differently, Greystone's position confuses deciding mootness with deciding the merits of the case. So in your view, when the District Court looked at the record that had been accumulated so far on the emotional damages point, what was it doing? Was it essentially engaged in a summary judgment analysis? Was it evaluating the sufficiency of the complaint? Was it comparing it to the Rule 68 offer? It's unclear what it was doing, Your Honor, because for all intents and purposes, it appears that Judge Durkin was deciding the matter in a vacuum, untethered to any recognized vehicle for evaluating the merits of the case, like a Rules 56 motion or a 12B6 motion or a trial, presiding over a bench trial. And what was the status of discovery at that point? Discovery had closed. And we had been past the summary judgment stage. Judge Hibbler had ruled in our favor on summary judgment as to Count 1 and as to the class. And he had ruled that there was a factual issue for trial as to Count 2 and as to Ms. Smith's request for actual damages as to Count 2. That was the record that Judge Durkin received, and we submit that in determining whether the case was moot, he should have only been asking, is there still a case or controversy at this point, and not asking, how should that controversy be resolved? Once you've decided that there's a controversy, and there obviously was because the parties disputed Count 2 and whether or not Ms. Smith could recover actual damages, at that point, the mootness inquiry is over, and it's time to deny Graystone's 12B1 motion to dismiss and move on to the trial. So as of July 20, the class was still certified, too, right? Yes, Your Honor. In fact, it had only been certified for about 20 days at that point. I think it was certified on June 30, 2010. But it was certified as of the second of the two Rule 68 offers. Yes, it was. Unfortunately, Judge Durkin went beyond just deciding whether there was a controversy. He attempted to evaluate the merits in a vacuum without applying the summary judgment standards that Judge Hibbler determined. And so we submit he went beyond the mootness inquiry at that point. It was also error for Judge Durkin to do that, not only because of the mootness doctrine and the limits of it, but also because of the law of the case doctrine. Once a district judge, in this case Judge Hibbler, has decided an issue, and he had decided that the plaintiffs should win summary judgment on count... What relevance could the law of the case have once the case reaches the Court of Appeals? Well, the only issue... the judgment before this Court... If there was no Article III jurisdiction in the district court, then once the case reaches the Court of Appeals, we are bound to reach that conclusion, no matter what a district judge did. Your law of the case argument seems to be a contention, but a district judge should knowingly decide a case over which it lacks jurisdiction, knowing that the Court of Appeals will reverse because there is no jurisdiction, just because some other judge made the same error. Can that be right? I may have had some difficulty following Your Honor's question, but... Look, let me phrase it as a statement. We have held that arguments based on the law of the case matter in the court that rendered the decision, but are irrelevant on appeal. I understand Your Honor's point. I'll move on. So let me ask it a little bit differently. As of the time Judge Durkin... You know, Greystone moves to dismiss for lack of subject matter jurisdiction on mootness grounds. And Judge Durkin takes this up. In what ways were you alerted to the fact that you needed to gather together the evidence on the actual damages and show the judge that this was part of the case, I guess I'll just say? Well, I'd say that we weren't alerted in any significant sense, because Judge Hibbler had already determined that the evidence that Ms. Smith presented, was sufficient to go to trial. He expressly ruled that in his summary judgment opinion. And the burden of proving mootness based on an event subsequent to the start of the case is on the defendant. So if the defendant's burden of production to go forward with the evidence at that point, we were not alerted that we had to go and re-present our summary judgment. Right, and that's what I'm trying to get at. Just as a matter of proceeding, of procedure at the district court level, whether you had the opportunity to show what the actual damages would be, or that there were genuine issues, so to speak, about the actual damages. Not that I'm saying that that has anything to do with mootness or not. It might or might not. So you were not, it wasn't teed up as some motion to reconsider Judge Hibbler's summary judgment ruling. Exactly, Your Honor. It wasn't a motion, a new motion for summary judgment, for example, where we know that we're going to be put to our proofs. It was simply, is there a case of controversy or not? That was the only issue that should have been raised before Judge Durkin. But instead, they asked him to, you know, in the last paragraph of their motion, they asked him to, they started talking about the merits. And we're like, well, Judge Hibbler's already resolved this, and the only issue here is case or controversy. So that's all we really need to talk about. And did that district court motion to dismiss that was granted focus on the 2009 Rule 68 offer or the 2010 Rule 68 offer? I believe it focused on the 2010 Rule 68 offer, Your Honor. So is it your contention, at least, that it's agreed that the 2009 offer, at least, and is really not pertinent anymore? Yes. I mean, it's not, the district judge relied on the 2009 offer for his decision, but the Greystone hasn't tried to defend that decision at all in its brief. So we argued at length that the 2009 offer was not a basis for dismissing this case for mootness for many of the same reasons as the 2010 offer. So it appears to be out of contention and not a basis for affirming at this point. An additional reason why the July 20 offer could not terminate the court's jurisdiction over this case is Federal Rule of Civil Procedure 23E, because we had a certified class at the time, and this offer, the July 20 offer, was made to Ms. Smith and the class jointly. Rule 68 normally operates to terminate a case automatically upon acceptance of an offer, but Ms. Smith did not have the power to give a judgment against a certified class. Okay, so here's the problem. I think I understand your point, that it's very, very difficult to reconcile 23E and 68, but we're supposed to try. And I believe the Supreme Court or a concurring opinion had pointed out that some years ago there were proposals to exclude class actions from Rule 68 that have been rejected. So what are we to make of those rejections, and how might one reconcile the two rules? I'm not familiar with the proposals, Your Honor, and I know Greystone has not raised them in its brief. I couldn't tell you how to reconcile the two under the circumstances. This Court has held in Webb v. James that when you accept an offer of judgment and it's tendered to the clerk with the acceptance and proof of service, the clerk has no choice. The clerk must then enter judgment. Shall enter judgment, right. And Rule 23E categorically prohibits that. It requires the district court to evaluate the proposal, decide whether it's fair, reasonable, and adequate to the class members, and then send out notice to the class and let them weigh in on it. They can object and say this offer is lousy, or they can opt out entirely and preserve their claims going forward. The point is, of course, is that Rule 23E perpetuates jurisdiction in the face of an offer of settlement or a Rule 68 offer, regardless of how it might operate in an individual context. An additional reason why the July 20 offer could not move this case is because, as this Court stated in Scott v. Westlake, there are reasons to question whether an offer, could ever move the case based on the reasoning of Justice Kagan's dissent in Genesis Health Care v. Cynchak. The only awkward thing about that part of your argument is that it's her dissent, but I take it your position is that the majority in that case set the issue to one side. She's the one who happened to discuss it. That's correct. She didn't contradict the majority. The majority said we don't need to decide this because the parties below agree that the claim was moved. On the other hand, that rule is pretty well entrenched in our circuit precedent at this point. I suppose it's old. It's been around for about 20 years. I think Rand v. Monsanto might be… You may have been around here when we were talking about cases that Chief Justice Marshall and Chief Justice Taney wrote earlier this morning, so 20 years ago doesn't seem that old. Yes, I suppose it's comparatively recent in the history of jurisprudence and this Court's decision-making, certainly. But the age of the rule doesn't necessarily mean it's correct, and we believe that Justice Kagan's reasoning is very hard to deal with, very difficult to overcome. As she points out, a withdrawn offer is a legal nullity. How can a legal nullity deprive the court of jurisdiction? Also, Rule 68's terms itself prohibit the district court from even considering the offer once it's been withdrawn except in a proceeding to determine costs and so on. I see that the white line is on. Yes, if you'd like to save a bit for rebuttal, that would be fine. I would, Your Honor. Thank you very much. Certainly. Mr. Bertocchi. Good morning. May it please the Court. My name is Joel Bertocchi, and I represent the appellee Graystone Alliance. I want to start by addressing a couple of Mr. Halicki's points. Really, all of the offers that were made, all three of them, had the same effect at the time. Three times Graystone tried to give up in this case, and three times the plaintiff wouldn't accept it. There's a big problem, and the problem is Gates v. Towery, which says that to take advantage of this doctrine, the defendant has to offer everything the plaintiff wants, and not only what the defendant concedes the plaintiff is due. Yes, Your Honor, that's absolutely correct. That seems to be a problem here, because the defendant hasn't offered everything the plaintiff wants. Well, Your Honor, the defendant has offered everything the plaintiff could get. That's it. No, that argument was expressly rejected in Gates. And I must say, I'm disturbed by your briefing in this case. Gates is relied on by the appellant, and your brief ignores it. Well, Your Honor, the plaintiff couldn't have put anything she wanted in there and said, this is what I want. What she wants has to be there. The plaintiff can put anything she wants in the complaint and say, I want the moon. Yes. If the defendant doesn't offer the moon, the case is live. The plaintiff will lose. The plaintiff may be sanctioned for frivolous litigation. But if the defendant doesn't offer the moon, the case is live. That is the holding of Gates. I understand. You would be entitled to ask us to overrule Gates. But you are not entitled to ignore Gates. I'm sorry, Your Honor, I didn't mean to. But I really don't think, even in light of Gates, that asking for the moon creates a case or controversy. It certainly does, unless you fail the Bell v. Hood line. And your 12b-1 motion was not a Bell v. Hood-based motion. It was a mootness motion. You might have a 12b-6 motion against a complaint that asks for things that are simply not recoverable. More likely you have a summary judgment motion if the discovery materials don't show that there's a genuine issue of disputed fact on an element of the case. But Rule 68 serves one particular function. It's an offer of judgment. We said in Gates you've got to offer everything the plaintiff wants. If that's the route you want to take. I understand, Your Honor. And you didn't. You didn't ever address her actual damages point. And the second offer, which apparently I would like to know whether you think this is the case, but if it's the July 20, 2010 offer, the class action point that we've been discussing is a very serious one indeed. Rule 23 sets up different procedures for all sorts of stages of the class procedure. And one of the most important and well thought out separate procedures deals with settlements. Your Honor, I agree. I acknowledge that. And there is a tension there. And I think had the offer been accepted, had one of the offers been accepted, the district court would have had to reconcile that. And how would it have done that? I think it would have had to conduct additional proceedings under Rule 23 as to that part of the offer. And violate Rule 68. Well, the clerk might have. Which says the clerk must then enter judgment. Well, if Rule 23 calls for more, then the clerk perhaps would enter a judgment as to the individual claims. And the court would do what it has to do under Rule 23. You're making a severability argument that's nowhere in Rule 68. Rule 68, that's the whole point of complete recovery. It's not count 1 versus count 3 versus count 25. Your Honor, that's how, that's the best I can do to reconcile the problem of Rule 68 and Rule 23. There's no exception for Rule 68. There's nothing in Rule 68 that says it doesn't apply to class actions. But there's everything in Rule 23 which has been changed much more recently than Rule 68. To add, for example, notice, a second round of notices was discussed extensively when Rule 23 was amended. Because some people said, well, there's already notice and opt out, you know, with the B3 class up front. Why should we have a second round? Those in charge decided that a second round was the way to go. So there's a second round of notice. I don't think there's any reason for us to make trouble here. It seems clear that Rule 23 has its own special system for settlements. I agree. And I think that system could have been invoked in this case. But it's not a moot case. And it's certainly not at all clear that your offer in some way wiped out every claim that the class could have. Well, Your Honor, the middle. There were disputed issues about your net worth. There were all sorts of things. Which didn't end up being disputed in the end. And the class, one of the things I would point out about the class in this case is that the judge, Judge Hibbler, rather. I guess I have to be specific in this case. That Judge Hibbler decertified the class. Basically, it isn't even by agreement. By the time he found the class claims. That doesn't make any difference for the power of the July 20, 2010 offer. That came along at a time when the class was certified. And it seems very clear that, I mean, well, let's take this. You know, you thought money would satisfy the class. For all I know, there might have been some element of injunctive relief that would have also been part of the class. Treatment not relevant to Ms. Smith. It just wasn't an offer that met the terms of the rule. Your Honor, we think that that was. All I can say is that the way I reconcile the tension is to say that the judge would have had the authority under Rule 23 to take additional steps. And probably would have been required to do so. Your Honor. The other problem I guess I have more specifically with the class action problem is the reliance upon your client's net worth as of the time you made the offer. Which, again, seems to confuse merits with mootness. Plaintiff wants lots of money. An unspecified amount. You say this is all they're entitled to given our current net worth. And the cap. The combination of the cap and the net worth. Exactly. But net worths fluctuate. Right? You could have jurisdiction or mootness blink off and on as the value of the company fluctuated. Days and bad days, Your Honor. Absolutely. Exactly. And that seems like a very, very odd way to find mootness. Well, Your Honor, the plaintiff never made that point. We sent them a balance sheet. We have a jurisdictional question here. I understand. We sent them a balance sheet and they backed off. They said, yes, it's moot. Judge Hibbler found that the class claims were moot based on that. And there isn't any other evidence in the record of the fluctuations you're talking about. We're trying to figure out something for more than just this case. I understand. And these fair debt collection cases produce this. Actually, I have to say, our circuit's case law allowing for this kind of mootness has produced a lot more litigation than it seems to have saved. It does, Your Honor. And I think there's a reason for that. And the reason is that these offer that, and I'm kind of jumping to what I was going to talk about last, which is the rule in Damascus, which the plaintiffs are essentially asking the court to approve. The rule is a good rule in these cases because these are fee-shifting statutes. And Congress, in its wisdom, made them fee-shifting statutes. But what we try to do in cases like this where we make these offers is cut them off. And that's why there is this litigation. You pick off the class representative. No, we don't. Of course that's what's going on. It's not picking off. It's picking off the case. It is. It's picking off the case, Your Honor. Somebody files a lawsuit that says you did something wrong and we want X. We try to give them X. But if you don't do it before the class is certified, you know, that's one thing, the pre-certification. You can pick off people. But once the class is certified, as you well know, you're dealing with a completely different set of problems. I'm also going to just throw in for the record that I was disappointed to see the district court judge think that what he was doing was making a ruling under Rule 60B-4, which couldn't have less to do with an ongoing case before the district court. But, you know, that's – Your Honor, I don't think – with all due respect to Judge Durkan, who I'm very fond of, I don't think we asked him to do that. Well, it doesn't – I mean, so you'll agree that Rule 60B-4 was in the wrong courtroom that day. I don't think it was – I agree and I don't think it was necessary to go that route. I think Judge Durkan thought it was. But, you know, jurisdiction can be reviewed at any time and I don't think he needed a procedural hook. It can be reviewed at any time, as can the jurisdictional theories that our court is thinking about. Yes. And I think this case is actually pretty simple. She asked for actual damages. You never met that. Then we have the added, you know, decoration of the class action claim in the certified class as of 2010. It's not a good Rule 68 offer. The case was wrongly dismissed as moot and you're just going to have to litigate it, whether it's at summary judgment or elsewhere. Well, Your Honor, you can consider that issue yourselves because – We can't convert – we normally do not convert, I should say, jurisdictional dismissals into merits dismissals. That's a change in the scope of the relief in your favor. You have no cross appeal. Your Honor, the court did that five weeks ago in the Richardson case. It has sometimes done it, but it is not always that. It certainly would at least depend on the record and the theory. Mr. Bertocchi, can I ask you, if we were even to go there, at page 26 of your brief you ask many rhetorical questions about the plaintiff's emotional injury and the lack of sleep and loss of appetite. Yes, Your Honor. Was she having difficulties falling asleep, waking more frequently during the night or earlier in the morning than usual? Was she sleeping for shorter periods of time than she was accustomed? Was she eating less or unable to eat? Was it certain foods, et cetera? How on earth are those – is it necessary to answer those questions in order to get to a jury? I think it's necessary to answer some of them or to move in that direction, Your Honor. And what I would suggest the court do, if you do get this far, is to take – is to compare the evidence in this case to the Catalan case. The Catalan case had – Does Catalan say it's establishing a floor? No. Catalan says that the evidence was not extensive but was enough. It doesn't say it's establishing a floor. Right. But Catalan was a Russian novel compared to the evidence that the plaintiff put in in this case, which was entirely conclusory. It's not conclusory. She's specific about what exact physical problems she's having. She's pregnant. She's – of course, she's not making separate trips to the doctor, but when you're pregnant, you go to your obstetrician and you tell the obstetrician what's been going on lately. And your obstetrician is your general doctor. Yes. And the plaintiff said she didn't go to her doctor because of anything Greystone did. She went to her obstetrician, though. Yes. And I'm saying that it's one and the same thing. But not because of Greystone. Right. Well, you added in. Well, if – there's no evidence that she added in. She says she told her doctor. Where's the doctor? She said she told her family. Where's the family? You can't corroborate yourself. You don't have to do that. Where's the corroboration requirement? Are we back in the common law? Where's this need for corroboration? Well, it might be a substitute for detail. There were – there used to be decisions of this circuit saying, well, you know, this affidavit is self-serving and not corroborated by third-party testimony. I think we have disapproved that as thoroughly as you can imagine disapproving it. Self-serving, uncorroborated first-person testimony is quite enough to make a case to the jury. If, in this instance, it's sufficient detail. The ILO case, which is still good law, says that the threshold is high because emotional damage is claimed to be manufactured. And that's why it asks for more than what the plaintiff in this case provided. If there are no further questions, I'll conclude here. All right. Thank you very much. Anything further, Mr. Hlicky? Very briefly, Your Honor. In terms of altering the judgment, aside from the law, we've said it frowns on changing the judgment from dismissal of the merits, which in fact we believe the Supreme Court doesn't allow it. I understand from the discussion that maybe it occurs. That might address the actual damages issue, but it still doesn't change the fact that Ms. Smith has not received any compensation on her claim for statutory damages. It would pose the problem of, in essence, retroactively mooting the case by making a decision on the merits, which would be very peculiar. Yes, Your Honor, absolutely. Also, the idea that they tried to give up or that that's inconsistent with the record, the idea that we didn't dispute their net worth, we were disputing it all the way along the way. In fact, in the opinion denying, in part, the motion to reconsider the summary judgment decision, Judge Hipple recognized, quite to the contrary to Greystone's argument, Smith does challenge Greystone's assertion of its net worth, questioning $600,000 of Greystone's long-term liabilities and so on. With that, unless there's any further questions. Apparently not, so thank you very much. Thank you, Your Honor. Thanks to both counsel. We'll take the case under advisement.